IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| IN RE | § § § | |
| MARK AUSTIN ROSETTA, | § § | CASE NO. 24-30092 |
| Debtor, | § § § | |

**WOODLAKE FOREST II HOMEOWNERS ASSOCIATION, INC.'S MOTION TO DISMISS MARK AUSTIN ROSETTA'S BANKRUPTCY**

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. YOU MUST FILE AND SERVE YOUR RESPONSE **WITHIN 21 DAYS** OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney. THERE WILL BE A HEARING ON THIS MOTION ON **APRIL 24, 2024, AT 1:30 P.M., IN COURTROOM 403**, AT THE FOLLOWING ADDRESS: **515 RUSK, HOUSTON, TEXAS 77002**.

Woodlake Forest II Homeowners Association, Inc., (hereinafter the "Movant") files this Motion to Dismiss pursuant to 11 U.S. Code § 707(b)(1), and shows as follows:

## I.    INTRODUCTION

1. Debtor Mark A. Rosetta (hereinafter the "Debtor") filed his Voluntary Petition for Individuals Filing for Bankruptcy in bad faith and for non-economic motives. Specifically, Debtor filed the instant bankruptcy in an effort to avoid the consequences of Debtor's criminal contempt of the state court Agreed Final Judgment and Permanent Injunction.

## II.   FACTS SUPPORTING MOTION TO DISMISS.

2. Movant is the Texas nonprofit corporation governing Woodlake Forest II subdivision in Harris County, Texas. Woodlake Forest II (hereinafter the "Subdivision") is a community of one hundred and four (104) townhomes. Debtor owns (but does not reside in) the townhouse located in the Subdivision at 9374 Briar Forest Drive, Houston, Texas 77063 (hereinafter the "Property").

3. In March of 2017, Debtor's neighbors, Carlos Guedez and Lucia Guedez (hereinafter the "Neighbors"), hired engineers to inspect their townhome. The engineers identified damage to the shared foundation and wall connecting the Property to Neighbor's townhome. **Exhibit One: Affidavit of Carlos Guedez.** Because the repairs needed to cure such damages required action from both the Neighbors and the Debtors, the Neighbors made demand on Debtor that he participate in the required repairs. **Id.** Debtor took no action to repair the Property. **Id.**

4. In August of 2017, Hurricane Harvey inundated the City of Houston with over forty inches of rain and hurricane-force winds. Every residence in the Subdivision sustained damage. Debtor's townhouse, and the adjoining townhouses, sustained significant flood and wind damage.

5. Once the waters receded, homeowners in the Subdivision began repairing their homes. However, Debtor took no action to repair the Property. Indeed, as of October 6, 2017, Debtor had not even cleared the Property of debris. Conditions in Debtor's Property created a strong and noxious odor, which understandably made the Neighbors concerned for their safety. **Id.** As of November 13, 2017, the Property had been abandoned by Debtor, there were holes on the Property's roof, and there was visible mold throughout the Property. **Exhibit Two: Affidavit of Lucia Guedez.**

6. The Property's deteriorating condition threatened the health, safety, and welfare of the Subdivision's residents. Therefore, Movant sued the Debtor to compel Debtor to repair the Property. Due to the significant risk the Property posed to their own townhome, the Neighbors intervened in the Movant's lawsuit.

7. On February 9, 2018, the Neighbors and Debtor agreed to the Court's entrance of an Agreed Temporary Injunction Order. **Exhibit Three: Agreed Temporary Injunction Order.** The Agreed Temporary Injunction Order required

Rosetta repair the Property. **Id.** However, Debtor did not make any of the required repairs. The Property continued to deteriorate.

8.  Movant obtained a Final Judgment against Debtor on March 26, 2018, awarding Movant attorneys' fees and costs. Neighbors' claims against Debtor were severed into an independent action and were set for an October 30, 2018, trial date. On the eve of trial – October 29, 2018 – Debtor filed his first bankruptcy in Cause No. 18-36002, *Marc Austin Rosetta, Debtor*. In so doing, Debtor succeeded in delaying trial on Neighbor's claims. Debtor took no further action in the bankruptcy, and on December 14, 2018, the Bankruptcy Court dismissed Debtor's bankruptcy for failing to file required schedules.

9.  On July 12, 2019, Debtor and Neighbors agreed to the entry of an Agreed Final Judgment and Permanent Injunction. **Exhibit Four: Agreed Final Judgment and Permanent Injunction** (hereinafter the "Agreed Judgment"). The Agreed Judgment compelled Debtor to repair the Property. **Id.** The Agreed Judgment further ordered Debtor pay the Neighbors' attorneys' fees and costs. **Id.**

10. Unfortunately, Debtor did not make any of the ordered repairs. Instead, Debtor continued to let the Property deteriorate. As an October 2022 inspection revealed, the Property is uninhabitable. **Exhibit Five: Hite Tech Inspections Report and Supporting Affidavit.** There are holes in the Property's roof, allowing both weather and wild animals to freely enter. **Id.** The Property is covered in mold.

**Id.** The foundation is cracked and damaged. **Id.** There is no gas service and no heat to the Property. **Id.** The wooden support structures are cracked and bowing. **Id.** The Property, as noted above, is connected to the two adjoining townhomes. The Property therefore represents a significant risk to the Movant's membership.

11. Neighbors, who expended thousands and thousands of dollars in attorneys' fees and costs in their action against Debtor, are not well-positioned to enforce the Agreed Judgment. Therefore, the Neighbors assigned the Agreed Judgment to the Movant so that Movant could take steps to protect the Subdivision from the Property's continued deterioration.[1] **Exhibit Six: Assignment.**

12. Movant sought to hold Debtor in contempt for Debtor's failure to repair the Property as required by the Agreed Judgment. The state court ordered the Debtor to appear and show cause on the afternoon of January 9, 2024, as to why Debtor should not be held in contempt. **Exhibit Seven: Order to Appear and Show Cause.** Mere hours before that hearing, on the morning of January 9, 2024, Debtor filed the instant bankruptcy.

13. Debtor's bankruptcy filings make numerous misrepresentations and contain several deficiencies. Debtor misrepresents Debtor's address in what appears to be an

---

[1] A party is not required to plead compliance with Tex. Prop. Code sec. 12.014 to be entitled to assert a claim acquired by assignment, which is merely a rule of registration that has no bearing as to the validity of the assignment. *HSB Bank USA, NA. v. Watson*, 377 SW 3d. 766,776 Tex. App. —Dallas 2012). Nor is a party required to plead that a claim was acquired by assignment in the absence of a special exception. *Magill v. Watson*, 409 SW 3d 673, 681 (Tex. App.— Houston [ 1st Dist.] 2013).

attempt to mislead his creditors and this Court. Debtor's Schedule A/B is missing all even-numbered pages. Debtor does not disclose or list on his schedules the Agreed Judgment, or the Movant's judgment for attorneys' fees and costs. Finally, Debtor claims a homestead exemption on the Property despite having no legal or factual basis for claiming such an exemption. Debtor has not lived in the Property for six (6) years; as two state court judges have determined, the Property is uninhabitable and needs significant repairs to become habitable; the Defendant has failed to make the state court ordered repairs to the Property – repairs Debtor would have performed if Debtor had any real intention to return to the Property as Debtor's homestead.

14. At the January 9, 2024 contempt hearing, the state court properly held Rosetta in criminal contempt. The state court signed its Modified Order to that effect on February 2, 2024. **EXHIBIT EIGHT: Modified Order.**

15. The commencement or continuation of a criminal contempt action is not automatically stayed by filing the bankruptcy petition. *In re Wiese*, 1 S.W.3d 246, 249 (Tex. App.—Corpus Christi 1999, no pet.) (citing *In re Allison*, 182 B.R. 881 (N.D. Ala. 1995); *In re Kearns* 168 B.R. 423 (D. Kan. 1994); *Stovall v. Stovall*, 126 B.R. 814 (N.D. Ga. 1990); *In re Roussin*, 97 B.R. 130 (D. N.H. 1989); *Hutchins v. Hutchins*, 330 Ark. 426, 954 S.W.2d 249 (Ark. 1997)). Despite this and out of an abundance of caution due to Debtor's second bankruptcy, Movant has taken no further action to enforce the state court's Modified Order.

16.  As with his first bankruptcy, Debtor's second bankruptcy is filed solely in bad faith and for non-economic reasons: namely, so that Debtor may avoid the consequences of Debtor's criminal contempt, and so that Debtor may continue to delay bringing Debtor's Property into a habitable, healthful condition as required by the Agreed Final Judgment and the Permanent Injunction so that it is not a danger and a hazard to surrounding homeowners. Movant therefore asks this Court to dismiss the instant bankruptcy.

### III.   ARGUMENTS AND AUTHORITIES

11 U.S. Code § 707(b)(1) provides that "any party in interest" may move to dismiss a Chapter 7 bankruptcy case. 11 U.S. Code § 707(a) authorizes a court to dismiss a Chapter 7 bankruptcy "only for cause." In the instant case, good cause for dismissing the bankruptcy exists because the Debtor did not file Debtor's bankruptcy petition in good faith.

### III.A: The Court's Duty to Dismiss Bad Faith Filings

Bankruptcy is intended to protect the honest debtor who files bankruptcy for economic motives (e.g. an efficient, orderly and timely disposition of assets in exchange for a discharge from debt). *In Re Krueger*, 812 F. 3d.365, 370 (5th Cir. 2016). Conversely, the dishonest debtor who files bankruptcy for non-economic motives is unworthy of bankruptcy protection. *Id*. at 372-373; *In Re Hesed Enterprises, LLC*, 2017 Bankr. LEXIS 3322, * 17 (N.D. Tex. 2017).

Accordingly, it is the Court's duty to dismiss illegitimate petitions filed by a dishonest debtor for non-economic motives, whose overriding motive is to use the automatic stay to delay honest creditors without benefiting them. *In Re Krueger*, 812 F. 3d. at 372-373*; see also In Re Little Creek*, 779 F. 2d 1068, 1072 (5th Cir. 1986).

### III.B: Good Faith Standard.

"Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986). As the Court noted in In re Little Creek Dev. Co, the "[r]equirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *Id*. at 1072. "Good faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose." *In the Matter of Metropolitan Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970). The Fifth Circuit has consistently held that a bankruptcy case should be dismissed if it is not filed in good faith. *See, e.g., In Re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016).

In weighing whether a petitioner filed bankruptcy in good faith, a court's decision "must then ultimately come down to whether [a] chapter 7 bankruptcy was filed for such an orderly disposition of assets or if, instead, it was filed for some other, unworthy purpose." *In re Hesed Enters., LLC* 2017 Bankr. LEXIS 3322, at *19 (Bankr. N.D. Tex. 2017) (citing *In Re Krueger* 812. F.3d 365, 375). A court should view the issue "with an eye to the debtor's entire course of conduct for evidence of non-economic motives unworthy of bankruptcy protection. *Id*. at *18 (internal quotations omitted).

The analysis of whether good faith exists is case-by-case and there is no universal test. *In re McMahan,* 481 B.R. 901, 915 (Bankr. S.D. Tex. 2012) "The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue." *In re Elmwood Dev. Co.*, 964 F.2d 508, 510 (5th Cir. 1992) (emphasis added).

To provide guidance on remand, the Fifth Circuit has identified six (6) factors that indicate a lack of good faith to guide courts in determining whether a debtor filed their petition in good faith. *In re McMahan*, 481 B.R. 901, 916 (Bankr. S.D. Tex. 2012). These factors are as follows:

    a. the debtor one asset, which is a tract of real property;

    b. the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

    c. the debtor has few employees;

    d. the debtor's real property is the subject of a foreclosure action;

    e. the debtor's financial problems involve essentially a dispute between the debtor and a secured creditor which can be resolved in a pending state court action; and,

    f. the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

*In re McMahan*, 481 B.R. 901, 916 (citing *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986); *In re Scotia Pacific Co.*, LLC, 508 F.3d 214, 223 (5th Cir. 2007)).

All six (6) factors need not be present to support a finding of bad faith, and the court may place more weight on any one factor to support a finding of bad faith than it does on others. *In re McMahan*, 481 B.R. 901, 915-916, 921 (Bankr. S.D. Tex. 2012).

As Debtor has done in this case, courts have found bad faith in other cases where a debtor filed bankruptcy only to avoid a pending criminal contempt preceding (see, e.g., *In Re Krueger*, 812 F.3d 365); and in cases where a debtor filed

bankruptcy "for the simple purpose to delay the entry of a judgment resulting from [a] state court jury verdict" (*In re Hesed Enters.*, LLC, 2017 Bankr. LEXIS 3322).

### III.C: Debtor's Bad Faith.

In the instant case, the six factors identified by the court in *In re McMahan* and *In Re Little Creek* weigh heavily in favor of a finding that Debtor is acting in bad faith.

### Debtor's Assets.

Debtor's most significant asset is Debtor's townhome, the property which is the subject of the state court Agreed Final Judgment and Permanent Injunction. Debtor's bankruptcy pleadings value this townhome at $275,000.00. Debtor claims an interest in a California property he values at $90,000.00, and Debtor values his personal property at $3,100.00. So, according to Debtor's pleadings, the Property that is the subject of the state court Agreed Final Judgment and Permanent Injunction makes up approximately seven-five percent (75%) of Debtor's assets. As noted above, Debtor has not lived in the Property for six (6) years; the Property is uninhabitable; and the Defendant has failed to make the court ordered repairs to the Debtor certainly would have performed if Debtor had any real intention to live at the Property. This Property, by far Debtor's largest asset, is the subject of the state court criminal contempt finding that Debtor's bankruptcy suggests Debtor seeks to avoid. These facts all weigh in favor of a finding of bad faith.

**Debtor's Creditors' Claims.**

Debtor's unsecured creditors' claims are small in relation to those of Debtor's secured creditors. Debtor identifies the Movant as a secured creditor, but neglects to include in Debtor's schedules the state court judgment awarding the Movant $13,988.00 in attorneys' fees and costs. Therefore, in reality, the Movant is owed $22,371.00 from Debtor – almost three times the amount Debtor references in his schedules. Moreover, Debtor lists the Neighbors as unsecured creditors, when in reality their Agreed Judgment for $17,730.00 is secured by an interest in the Property. Debtor also lists Harris County as a secured creditor. All other creditors are owed merely $21,149.00. This means secured creditors make up approximately sixty-six percent (66%) of the claims against the Debtor. As described more fully below, this also means that the vast majority of the claims against the Debtor belong to one single creditor.

This is especially true when considering the age of Debtor's other claims. Among Debtor's unsecured creditors, Debtor lists unsecured creditor claims from February of 2013, eleven years ago; February of 2018, six years ago; November of 2015, seven years ago; April 2018, almost six years ago;  and August of 2019, five years ago. Even to the extent these claims have not expired under the relevant statutes of limitations, the fact that Debtor sought protection from these old debts the day of the state court's criminal contempt proceeding against Debtor indicates that

Debtor is not actually trying to resolve these debts, but is merely using them as cover for Debtor's true purpose: thwarting the state court from imposing on Debtor the consequences of Debtor's criminal contempt.

These facts weigh towards in favor of finding Debtor filed bankruptcy in bad faith.

### Debtor's Employees.

Debtor has no employees.

### Property Subject to Foreclosure

While Debtor's Property is not subject to a pending foreclosure, the Debtor is subject to an injunction requiring Debtor repair the Property, as well a criminal contempt finding for failing to do so. Analogous to a debtor filing bankruptcy in bad faith for the sole purpose of delaying a pending foreclosure, in the instant case the Debtor filed his second bankruptcy for the sole purpose of delaying the state court's enforcing its injunction against him through criminal contempt. The sole motivating reason that Debtor filed this second bankruptcy case is to delay the criminal contempt proceeding against him, the same circumstances under which the Fifth Circuit affirmed the bankruptcy court's dismissal of a bankruptcy for bad faith in *In Re Krueger*, 812 F. 3d 365, 375 (5th Cir. 2016). These facts weigh heavily in favor of finding bad faith.

## Debtor's Financial Problems Can be Resolved in State Court.

Debtor's financial problems, in large part, involve essentially a dispute between the Debtor and a single creditor which can be resolved in a pending state court action. One single creditor – the Movant, through the Movant's claims and through Neighbors' assigned claims – are owed $40,101.00. All other creditors are owed merely $21,149.00. Resolving the debts owed to Movant will in large part resolve the Debtor's financial problems: especially (as discussed below) Debtor's bankruptcy is filed directly in response to those claims. Moreover, those claims are currently at issue in the state court's finding that Debtor is in criminal contempt. This case is a two-party dispute that was actively being prosecuted in state court, which is in a better position to resolve this dispute. This factor weighs heavily in favor of finding bad faith.

## Timing of Filing Evidences an Intent to Delay

The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. Debtor filed bankruptcy mere hours before the contempt hearing through which Movant sought to enforce Movant's rights. This is, as noted above, the second time the Debtor has filed a bankruptcy within one day of a pending judicial determination as to the Property. It is clear Debtor filed this second bankruptcy for the sole purpose of delaying justice. In analyzing factors when considering a motion to dismiss a

bankruptcy, "the Court may place more weight on one factor than another." *In re McMahan*, 481 B.R. 901, 916 (Bankr. S.D. Tex. 2012). In the instant case, this Court should place the most substantial weight to the timing of Debtor's instant second bankruptcy, as the Court did in *In re McMahan*, 481 B.R. 901. The timing factor clearly establishes Debtor's bad faith.

### Factors Support Bad Faith Finding

These factors support a finding of bad faith. Debtor quite clearly filed this second bankruptcy solely for non-economic motives. Debtor's purpose in filing bankruptcy mere hours before the time at which the state court had ordered Debtor to show cause as to why Debtor should not be held in contempt is no accident, no more than Debtor's previous decision to file his first bankruptcy mere hours before a trial setting concerning the same subject matter in 2018. Debtor's motives in this bankruptcy have nothing to do with resolving Debtor's financial situation. Rather, Debtor is entirely motivated by a desire to avoid responsibility for repairing the Property as he agreed to do and as the state court has ordered him to do.

### IV.   HEARING

THERE WILL BE A HEARING ON THIS MOTION ON APRIL 24, 2024, AT 1:30 P.M., IN COURTROOM 403, 515 RUSK, HOUSTON, TEXAS 77002.

### V.   CONCLUSION

Debtor had no economic motive in filing this bankruptcy petition. Instead, Debtor filed his Voluntary Petition for Individuals Filing for Bankruptcy in bad faith, and for non-economic motives. Debtor's sole motivation in seeking this Court's protection is to avoid the consequences of Debtor's criminal contempt. This Court should dismiss Debtor's bankruptcy and allow Movant to obtain justice by resolving Movant's dispute with Debtor in state court.

Respectfully Submitted,

HOLTTOLLETT, P.C.

*/s/ David Berk*

David Berk
Texas Bar No.: 24092127
Southern District No.: 2792721
Holt & Young, PC
9821 Katy Freeway, Suite 350
Houston, Texas 77024
Phone: (713) 510-1000 Phone
Fax: (713) 510 -1001 Fax
Email: dberk@holttollett.com

## CERTIFICATE OF SERVICE

I hereby certify a true and correct copy of the foregoing was served on the following parties, pursuant to Local Rule 9013-1(d), by certified mail; and, by first class mail; and, by electronic service via the Court's ECF filing system (if registered), and this 18th day of March, 2024, on Debtor, on the Chapter 7 Trustee, on the twenty (20) largest unsecured creditors, and on those parties having an interest in the real property, those parties claiming a lien against real property, and the United States Trustee, as follows:

**Debtor:**

Mark Austin Rosetta, Debtor
9374 Briar Forest Drive
Houston, Texas 77063

**Trustee:**

Allison D Byman, Chapter 7 Trustee
Byman & Associates PLLC
7924 Broadway
Suite 104
Pearland, Texas 77581

**Examiner:**

[NONE APPOINTED]

**Twenty (20) Largest Unsecured Creditors:**

CA Franchise Tax Board
Bankruptcy Section
P.O. Box 2952
Sacramento, California 95812

Carlos and Lucia Guedez
9372 Briar Forest Drive
Houston, Texas 77063

City of Houston
1400 Lubbock Street
Houston, Texas 77002

Memorial Hermann Healthcare System
929 Gessner Drive, Suite 2600
Houston, Texas 77024

JP Morgan Chase
P.O. Box 15369
Wilmington, Delaware 19850

Synchrony Bank/Wal Mart
P.O. Box 71746
Philadelphia, Pennsylvania, 19176

Best Buy/CBNA
P.O. Box 6497
Souix Falls, North Dakota 57117

Cirro Energy
P.O. Box 2229
Houston, Texas 77252

Mercantile Adjustment Bureau
165 Lawrence Bell Drive, Suite 100
Williamsville, New York 14221

**Creditors With an Interest in Real Property:**

Harris County Tax Collector
P.O. Box 4663
Houston, Texas 77210

Carlos and Lucia Guedez
9372 Briar Forest Drive
Houston, Texas 77063

**Parties Claiming a Lien on the Subject Property:**

Carlos and Lucia Guedez
9372 Briar Forest Drive
Houston, Texas 77063

**United States Trustee:**

Office of the US Trustee
515 Rusk Avenue, Suite 3516
Houston, Texas 77002